IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BOBBY J. BROWN**, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>**SERVICE GROUP OF AMERICA, INC.**,<br>a foreign corporation,<br><br>       Defendant. | Case No. 3:20-cv-02205-IM<br><br>**OPINION AND ORDER** |

J. Randolph Pickett; Kimberly O. Weingart; R. Brendan Dummigan; Shangar S. Meman, Pickett Dummigan McCall LLP, 210 SW Morrison Street, Suite 400, Portland, OR 97204. Attorneys for Plaintiff.

Sean K. Conner; Ryan J. McLellan, Smith Freed Eberhard, 111 SW Columbia Street, Suite 4300, Portland, OR 97201. Attorneys for Defendant.

**IMMERGUT, District Judge.**

      Defendant Service Group of America, Inc. ("SGA") moves this Court for an order dismissing this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). ECF 11 at 1. Defendant SGA requests, in the alternative, an order dismissing two counts from Plaintiff Bobby J. Brown's Complaint and an order striking certain allegations from

the Complaint. *Id.* at 2. For the reasons set forth below, this Court GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.[1]

## BACKGROUND

This suit arises out of an alleged workplace injury involving Plaintiff Bobby J. Brown and his employer, Food Services of America, Inc. ("FSA"). On November 15, 2018, Plaintiff began his employment and training with FSA as a frozen foods warehouse order selector at its warehouse located in Woodburn, Oregon. ECF 1 at 8, 10. Plaintiff alleges that during his first two weeks on the job, he complained about his hands being cold while working in FSA's warehouse freezer. *Id.* at 10. On December 9, 2018, Plaintiff went to the emergency room where he was diagnosed with frostbite of all ten digits. *Id.* at 11. Plaintiff alleges that FSA provided improper gloves that were not rated or appropriate for the temperatures and working conditions in the warehouse. *Id.* at 10.

Defendant SGA is a Delaware corporation with its principal place of business in Arizona. *Id.* at 7. SGA is a holding company whose relationship to this suit is that it was the owner of FSA during the time that Plaintiff alleges he sustained an injury. *See id.*[2] Plaintiff alleges that SGA "carried on regular and sustained business activity in Multnomah County[, Oregon] by overseeing a food distribution center located [there]." *Id.* Defendant claims that it does not conduct business in the State of Oregon nor is it licensed to do so. ECF 12, Smith Decl., at 1.

---

[1] Because this case is dismissed on jurisdictional grounds, this Court will not address Defendant's alternative requests for relief.

[2] SGA is the former owner of FSA, and owned the company until September 13, 2019. ECF 12, Smith Decl., at 2. U.S. Foods, Inc. and U.S. Foods Holding Corp. were originally named as defendants in the action; but were voluntarily dismissed on January 14, 2021. ECF 7. U.S. Foods, Inc., a subsidiary of U.S. Foods Holding Corp., merged with FSA on January 2, 2020—after U.S. Foods Holding Corp. acquired SGA and its food group of companies. ECF 1 at 8.

SGA does not sell products, provide services, advertise, or seek business in the State of Oregon. *Id.* at 2. It does not have employees, customers, or clients in the State of Oregon. *Id.*

## LEGAL STANDARD

A defendant may seek dismissal of the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). In determining whether a plaintiff has met its burden, a district court may consider evidence contained in affidavits and discovery materials. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Where undisputed, a district court must take as true the plaintiff's version of the facts. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Further, "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.* (internal quotation marks and citation omitted). However, if only one side of the conflict is supported by affidavit, the court's task is "easy," as it must accept that evidence. *Data Disc, Inc.*, 557 F.2d at 1284.

## DISCUSSION

### A.     Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

Defendant claims that under Federal Rule of Civil Procedure 12(b)(2) this Court cannot exercise personal jurisdiction over it and the case should be dismissed. ECF 11. Plaintiff has not alleged sufficient facts to establish this Court's jurisdiction under either a direct theory of

specific personal jurisdiction or through an alter ego theory of imputed contacts. Accordingly, this Court grants Defendant's motion and dismisses this action without prejudice.

### 1. Specific Personal Jurisdiction

Plaintiff asserts that specific personal jurisdiction is proper over Defendant under Oregon's long-arm statute. ECF 22 at 6. Federal courts typically look to state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Oregon law authorizes personal jurisdiction over defendants to the full extent permitted by the United States Constitution. *See* Or. R. Civ. P. 4L. Any exercise of jurisdiction by this Court over Defendant must "comport[] with the limits imposed by federal due process." *Daimler*, 571 U.S. at 125. For the exercise of personal jurisdiction over a defendant to be proper, due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction.[3] *See Daimler*, 571 U.S. at 127; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

Specific personal jurisdiction is exercised when a state asserts jurisdiction over a defendant in a lawsuit "arising out of or related to the defendant's contacts with the forum

---

[3] A court may assert general personal jurisdiction over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317). Because Plaintiff agrees that Defendant is not subject to general personal jurisdiction in Oregon, ECF 22 at 4, this Court declines to analyze this issue.

PAGE 4 – OPINION AND ORDER

[state]." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Specific jurisdiction is informed by "the quality and nature of the defendant's contacts with the forum state in relation to the cause of action." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). The Ninth Circuit applies a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006) (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). "The plaintiff bears the burden on the first two prongs of the test." *Schwarzenegger*, 374 F.3d at 802. If the plaintiff establishes both prongs, the burden then shifts to the defendant who must provide a compelling case that the exercise of jurisdiction is unreasonable. *Id.* If, however, the plaintiff fails to establish either of the first two prongs, personal jurisdiction is not established in the forum state. *Id.*

Plaintiff's brief does not adequately engage with this required analysis. Instead, Plaintiff simply recites the jurisdictional case law while providing little substantive argument about why the exercise of jurisdiction over Defendant is appropriate. For example, Plaintiff notes that because SGA is "an industrial giant with immense business holdings in the food distribution sector," the case law is more amenable to the exercise of jurisdiction. ECF 22 at 16. Referencing Justice Breyer's concurrence in *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011),

PAGE 5 – OPINION AND ORDER

Plaintiff notes that courts should be less hesitant to exercise jurisdiction when the defendant is a larger entity and not a small retailer. *Id.* But the case law Plaintiff cites involves complexities in the jurisdictional analysis that are specific to *products liability* and have little application here.[4] Defendant correctly notes that there is no evidence that Defendant selected, manufactured, distributed, or sold the personal protective equipment that allegedly caused Plaintiff's injury. ECF 24 at 1–2.

Under the first prong, Plaintiff must show that Defendant purposefully directed its activities toward the State of Oregon or purposefully availed itself of the privilege of conducting activities in the state.[5] *Yahoo!*, 433 F.3d at 1205–06. The first prong of the specific jurisdiction test is satisfied when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (internal quotation marks omitted) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The Ninth Circuit evaluates

---

[4] This line of reasoning is similar to the argument advanced by the plaintiff in *Lathrop v. Wabash Nat'l Corp.*, who was injured by a faulty step on a trailer. No. 3:20-cv-02276-AC, 2021 WL 4450010, at *1 (D. Or. Aug. 26, 2021). The plaintiff attempted to impute contacts from a purported subsidiary to its purported parent by citing cases discussing specific jurisdiction in the context of stream-of-commerce situations. *Id.* at *6–7. The court in *Lathrop* noted the plaintiff's error in relying on these cases because the plaintiff could not show that he was injured by a product placed into the stream of commerce by the purported parent. *Id.* at 7. Similar to the faulty step in *Lathrop*, Plaintiff has failed to show a connection between the gloves—provided by his employer, FSA—and Defendant. Thus, Plaintiff's cases are readily distinguishable and do not warrant the Court's exercise of specific jurisdiction.

[5] Although courts sometimes use the terms "purposeful direction" and "purposeful availment" interchangeably, they are distinct concepts. Courts most often use a purposeful direction analysis for suits sounding in tort, while a purposeful availment analysis is applied for suits sounding in contract. *Yahoo! Inc.*, 433 F.3d at 1206. Because Plaintiff's claims arise in tort, this Court applies the purposeful direction analysis.

PAGE 6 – OPINION AND ORDER

purposeful direction cases under the "effects" test,[6] which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *see also Schwarzenegger*, 374 F.3d 797, 805 (9th Cir. 2004) (noting that all three parts of this test must be satisfied).

The intentional-act prong requires "intent to perform an actual, physical act in the real world" and an "external manifestation of" that intent. *Schwarzenegger*, 374 F.3d at 806 (internal quotation marks and citation omitted). The express aiming prong requires something more than just "untargeted negligence"—the defendant's conduct must be intended to reach a person "whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (internal quotation marks and citation omitted), *overruled in part on other grounds by Yahoo! Inc.*, 433 F.3d 1199 (9th Cir. 2006) (en banc). And finally, the harm prong requires that the defendant's actions be "performed for the very purpose of having their consequences felt in the forum state." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). Plaintiff provides no evidence that Defendant's conduct satisfied any of these elements. Even at the most basic level, it is unclear from the record exactly what act by Defendant could have possibly precipitated the harm in this case.

With respect to the second prong, which evaluates relatedness, this Court is also skeptical of Plaintiff's claim that the inadequate personal protective equipment provided by FSA arises out of or relates to Defendant's forum-related activities. This prong is met if the plaintiff would not have suffered an injury "but for" the defendant's conduct directed toward the plaintiff in the

---

[6] The "effects test" is derived from *Calder v. Jones*, 465 U.S. 783 (1984).

PAGE 7 – OPINION AND ORDER

forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). Thus, Plaintiff here must show he "would not have been injured 'but for' [SGA's] conduct directed toward [Plaintiff] in [Oregon]." *Id.* Plaintiff does not identify any of Defendant's activities in the State of Oregon that could have given rise to Plaintiff's alleged injury. As addressed in further detail below, Plaintiff alleges no relationship to the forum other than through the contacts of Defendant's subsidiary, FSA. As a result, Plaintiff also fails to satisfy this prong. Because Plaintiff has failed to show it has satisfied the first two prongs, it is not necessary for this Court to analyze whether the exercise of jurisdiction is reasonable.[7] *Schwarzenegger*, 374 F.3d at 802.

### 2. Alter Ego Theory

This Court now turns to the issue of whether personal jurisdiction can be established over Defendant through a theory of imputed contacts. At issue is the relationship between Defendant, a corporate parent, and FSA, its subsidiary.[8] Plaintiff urges this Court to impute FSA's contacts to Defendant. *See* ECF 22 at 16 ("SGA also participates in the activities of its subsidiaries such that it reaches the level of an alter ego relationship."). But a subsidiary's contacts with the forum state do not automatically establish jurisdiction over its parent. *Keeton v. Hustler Mag., Inc.*, 465

---

[7] Seven factors must be balanced to evaluate reasonableness: (1) the extent of purposeful interjection; (2) the burden on a defendant to defend this suit in Oregon; (3) the extent of conflict with the sovereignty of the defendant's state; (4) Oregon's interest in the dispute; (5) the most efficient forum for judicial resolution of the dispute; (6) the importance of the chosen forum to Plaintiff's interest in convenient and effective relief; and (7) the existence of an alternate forum. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 (9th Cir. 1993).

[8] As noted above, Plaintiff agrees that Defendant is not subject to general personal jurisdiction in Oregon. ECF 22 at 4. Defendant correctly notes that the alter ego test has been construed as a test of general jurisdiction. ECF 24 at 7; *see Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015). But this does not itself defeat Plaintiff's claim because he did not also concede a lack of general jurisdiction on the part of FSA whose contacts he seeks to impute to Defendant.

PAGE 8 – OPINION AND ORDER

U.S. 770, 781 n.13 (1984). Rather, each defendant's contacts with the forum must be assessed individually. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

Thus, even assuming extensive contacts with the forum on the part of FSA, this Court cannot exercise jurisdiction over Defendant by simply relying on the existence of a corporate relationship between the entities. Instead, Plaintiff must prove that the relationship between a parent and its subsidiary are so intertwined that the entities are functionally "alter egos"; and thus, the imputation of contacts through a jurisdictional piercing of the veil is warranted. This alter ego test is "typified by parental control of the subsidiary's internal affairs or daily operations." *Ranza*, 793 F.3d at 1071 (internal quotation marks omitted) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)). To satisfy this test, a plaintiff must show (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* at 1073 (internal quotation marks omitted) (quoting *Unocal Corp.*, 248 F.3d at 926).

The first prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted) (quoting *Unocal Corp.*, 248 F.3d at 926).[9] Plaintiff does not allege sufficient facts for this Court to find there is such unity of interest and ownership to make the

---

[9] Touchstones that courts use to guide their analysis include:
> "[I]nadequate capitalization, commingling of funds and other assets, holding out by one entity that it is liable for the debts of the other, identical equitable ownership, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers."

*See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1250 (9th Cir. 2017) (internal quotation marks and citations omitted).

PAGE 9 – OPINION AND ORDER

exercise of jurisdiction appropriate. Plaintiff points to several pieces of evidence which he argues effectively eliminate the line differentiating the entities. First, he claims that Defendant has significant control over FSA's corporate strategy and operations—noting that Defendant deployed an "integrated" investment strategy and that Defendant took responsibility in "hiring executive management and appointing the board of directors that manages [FSA]." ECF 22 at 17. Plaintiff also notes an overlap between Defendant's and FSA's legal department and corporate communications group, reporting and compliance policies, customer base, financial evaluations, executive travel arrangements,[10] and headquarters. *Id.* at 17–18.

But Plaintiff fails to appreciate that courts will not pierce the veil without a more significant showing of control. *Ranza*, 793 F.3d at 1073 ("This [alter ego] test envisions *pervasive* control over the subsidiary[.]" (emphasis added)); *see also Unocal Corp.*, 248 F.3d at 927 ("A parent corporation may be directly involved in financing and macro-management of its subsidiaries, however, without exposing itself to a charge that each subsidiary is merely its alter ego."). A court's evaluation of "pervasive control" looks at whether a parent directs "every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Unocal Corp.*, 248 F.3d at 926 (internal quotation marks, citation, and alterations omitted). Shared staff and offices, for example, are alone insufficient. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

The Ninth Circuit in *Ranza* refused to apply the alter ego test even though the parent company was "heavily involved" in the subsidiary's operations. 793 F.3d at 1075; *see also*

---

[10] Plaintiff notes that "SGA would often travel with executive members of the operating companies, using aircraft held by SGA itself or a separate entity called SGA Aviation, LLC." ECF 22 at 18. However, the record shows that while FSA executives were permitted to use Defendant's aircraft, FSA was charged for that use. ECF 25, Ex. B, at 30.

PAGE 10 – OPINION AND ORDER

*Eclectic Props. E., LLC v. The Marcus & Millichap Co.*, No. C–09–00511 RMW, 2012 WL 713289, at *5 (N.D. Cal. Mar. 5, 2012) (holding insufficient to establish alter ego liability evidence that the entities "occup[ied] the same corporate headquarters, share[ed] many of the same employees and agents, and share[ed] the same corporate philosophy and operating principles"). The parent company in *Ranza*:

> [E]xercise[d] control over [the subsidiary's] overall budget and ha[d] approval authority for large purchases; establishe[d] general human resource policies for both entities and [was] involved in some hiring decisions; operate[d] information tracking systems all of its subsidiaries utilize[d]; ensure[d] the [parent company's] brand [was] marketed consistently throughout the world; and require[d] some [of the subsidiary's] employees to report to [the parent company's] supervisors on a "dotted-line" basis.

793 F.3d at 1074. Considering that the evidence of control presented by Plaintiff is no more significant than what was alleged in *Ranza*, this Court is not persuaded that piercing the veil separating Defendant and FSA is warranted.

Another case from this district, *Sundberg v. Joint Apprenticeship Training Commitee of the Northwest Line Construction Industry*, is illustrative of the level of control necessary to sustain an alter ego theory. No. 3:17-cv-01360-JR, 2018 WL 7108064 (D. Or. Dec. 4, 2018), *report and recommendation adopted,* No. 3:17-CV-01360-JR, 2019 WL 310117 (D. Or. Jan. 23, 2019). In *Sundberg*, the court rejected the plaintiff's alter ego claim even though the record contained significant indicia of the parent's control over its subsidiary. *Id*. at *3–4. For example, the subsidiary did not maintain its own human resources department and its employees were provided with orientation policies developed by the parent. *Id.* at *3. The parent was also involved with prospective employee inquiries and certain employee complaints, and retained the ability to discipline its subsidiary's senior managers. *Id.* Still, the court found that the subsidiary retained its corporate autonomy because this evidence did not establish that the parent controlled "every facet of the subsidiary's business." *Id.* (quoting *Unocal Corp.*, 248 F.3d at 926).

PAGE 11 – OPINION AND ORDER

Defendant provides persuasive evidence that it did not direct either the broad policy decisions or day-to-day operations at FSA. Defendant notes that FSA had its own executive management team, including its own president and vice presidents who were responsible for daily operations. ECF 25, Ex. A, at 4–5, 10. FSA developed its own associate handbook, maintained its own payroll, had its own human resources department, was responsible for its own profits and losses, and managed its own safety operations. *Id.* at 8, 24–25; *Id.*, Ex. B, at 31. SGA executives only visited the Woodburn facility where Plaintiff worked twice a year. ECF 23-2, Ex. 2, at 15. While it is true that Defendant developed guiding principles for FSA, Defendant did not strictly police FSA's compliance. ECF 25, Ex. A, at 8–9. In short, Defendant's activities with regard to FSA consist of routine operations between a parent and its subsidiary. Such operations do not amount to the "pervasive control" necessary for this Court to dismantle the corporate form separating these entities.[11] Thus, Plaintiff has not alleged sufficient facts to satisfy the unity prong of the alter ego test.

Not only does Plaintiff fail to meet the first prong, he fails to adequately plead that he satisfied the second prong. The second prong requires a plaintiff to demonstrate that the alleged injustice "relate[s] to the forming of the corporation or abuse of the corporation, not a fraud or injustice generally." *In re W. States Wholesale Nat'l Gas Antitrust Litig.*, 605 F. Supp. 2d 1118,

---

[11] Plaintiff also argues that Defendant's role in dictating the "values" of its subsidiaries is probative. ECF 22 at 17 (noting that Defendant expected its subsidiaries to implement "safe work practices, comply[] with all applicable safety standards, and ensur[e] a secure workplace"). But Plaintiff cites no case law to demonstrate how the promotion of the most ubiquitous and general values of safety and compliance would blur the line between these entities. Plaintiff also argues that FSA's status as a wholly-owned subsidiary and Defendant's corporate size is relevant. *Id.* at 16–17. This fact is not dispositive on the analysis. *See Ranza*, 793 F.3d at 1073 ("Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."). Further, this Court has found no support for the argument that a corporate parent is more susceptible to veil piercing simply by virtue of its size.

PAGE 12 – OPINION AND ORDER

1133 (D. Nev. 2009) (citing *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524 n.12 (9th Cir. 1984)). This doctrine provides a plaintiff with a tool to pierce the veil when a parent company is acting in bad faith and hiding behind the corporate form to escape liability. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017). But Plaintiff's inadequate pleading is fatal to his alter ego theory. *Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. Cal. v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir. 1989) ("[E]ven if the [plaintiff] prevailed on the first factor of the corporate piercing test by demonstrating that [the individual defendant] commingled his personal assets with those of [the corporate defendant], it must additionally prove fraudulent intent or injustice."). Accordingly, Plaintiff has not shown that Defendant and FSA are alter egos and Plaintiff may not impute FSA's contacts to Defendant to establish personal jurisdiction over Defendant.

## CONCLUSION

For the reasons stated above, this Court GRANTS Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. ECF 11. Plaintiff's claims against Defendant SGA are dismissed for lack of personal jurisdiction.

**IT IS SO ORDERED**.

DATED this 5th day of January, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 13 – OPINION AND ORDER